# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREW L. VALENTINE, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 18-4733 |
| | : | |
| JOSEPH M. LYNCH, *et al.*, | : | |
|     Defendants. | : | |

## MEMORANDUM

**MCHUGH, J.**                                                                                                 **JANUARY 9, 2019**

      Plaintiff Andrew L. Valentine, a prisoner incarcerated at the Montgomery County Correctional Facility, filed this *pro se* civil action pursuant to 42 U.S.C. § 1983, based on allegations that Prime Care Medical, Inc. and some of its employees were deliberately indifferent to his serious medical needs. In a Memorandum and Order entered on the docket November 27, 2018, the Court granted Mr. Valentine leave to proceed *in forma pauperis* and dismissed his Complaint without prejudice for failure to state a claim pursuant to 28 U.S.C. §1915(e)(2)(B)(ii). (ECF Nos. 6 & 7.) Valentine was given leave to file an amended complaint.

      On December 20, 2018, the Court received a "Motion for Time Extension to file Motion for Appointment of Counsel" with an attached a motion for counsel. (ECF No. 8.) On December 26, 2018, the Court received Valentine's Amended Complaint and a Motion for Appointment of Counsel. (ECF Nos. 9 & 10.) For the following reasons, the Court will dismiss Mr. Valentine's Amended Complaint without prejudice to amendment and deny his motion for counsel at this time. Valentine's motion seeking an extension of time will be denied as moot.

## I. FACTS AND PROCEDURAL HISTORY[1]

According to the initial Complaint, Valentine sustained injuries to his lower back in connection with his arrest on July 26, 2018. Valentine was taken to the hospital and received x-rays and medication for his injuries. On July 27, 2018, Valentine was incarcerated at the Montgomery County Correctional Facility. Valentine alleged that state police provided the intake nurse with a copy of his medical records and the intake nurse assured him that he would "be getting all his correct medication from the Hospital." (Compl. at 4, ¶ 13.)[2]

Valentine alleged that he did not receive medication until July 29, 2018 and that he received Motrin rather than the prescribed medication.[3] Valentine also alleged that he only received medication for ten days, even though he was still in pain. Accordingly, on August 8, 2018, Valentine began submitting sick-call requests asking to be seen for pain in his lower back and/or for muscle spasms.

It appears that Valentine had knee surgery at some point prior to his incarceration. On September 10, 2018, Valentine "reinjured his left knee," which caused him difficulty walking. (*Id.* at 5, ¶ 16.) Valentine informed a correctional officer about his injury and was told to submit a "sick-call slip." (*Id.* at 5, ¶ 17.)

Valentine "continued to file sick-call requests slips, continued to spe[a]k to the medication nurses regarding the pain he was having and the problem he was having walking and still got no help from anyone from PrimeCare Medical." (*Id.* at 5, ¶ 18.) On October 12, 2018, Valentine

---

[1] The facts and procedural history are taken from the pleadings filed in this case and the docket for this case.

[2] The Court adopts the pagination assigned to Valentine's pleadings by the CM-ECF system.

[3] The Complaint did not indicate what medication or medications Valentine was prescribed at the hospital.

2

filed a grievance, which sought an M.R.I., an x-ray, pain medication, a visit with a doctor, and a cane for ambulation.

Three days later, Valentine was seen by a Nurse Practitioner, Sung Kin, who told Valentine she was a doctor, informed Valentine that he does not need medication, and declined to order an M.R.I. She also denied Valentine a cane, allegedly because he "is on medium security" even though another inmate on Valentine's cell block uses a walker to ambulate. (*Id.* at 5, ¶ 21.) However, Kin ordered Motrin and an x-ray for Valentine's knee.

On the same day, Valentine met with Joseph Lynch, the head of the Medical Department at the Montgomery County Correctional Facility, about his grievance. It is not clear from the Complaint what they discussed, but Valentine indicates that he "signed the Grievance Response." (*Id.* at 5, ¶ 22.) In his initial Complaint, Valentine appeared to take issue with the fact that Lynch did not provide him with a copy of the signed grievance response.

The next day, October 16, 2018, Valentine received an x-ray of his left knee. As of the time he filed his initial Complaint, he claimed he had not been informed of the result of that x-ray. Valentine appealed his grievance on October 17, 2018, seeking "an M.R.I.; a cane to walk; pain medication; and to be seen by a knee Doctor." (*Id.* at 5-6, ¶ 25.) It is not clear whether Valentine received a response to the grievance at the time he filed his initial Complaint, but he filed a new grievance on October 23, 2018 "regarding not receiving his copies of the First Grievance Response and the same issues." (*Id.* at 6 ¶ 26.) Two days later, on October 25, 2018, Valentine saw Doctor Cohan, who "allegedly Ordered an M.R.I . . . [and] a Cane for [Valentine] and some new Medication." (*Id.* at 5, ¶ 27.)

In his initial Complaint, Valentine contended that he has "been in constant pain since July 26, 2018" as a result of the injuries he sustained in the course of his arrest, and that he "told

3

PrimeCare Medical numerous times via sick-call slip and telling the medication nurses but no one cared." (*Id.* at 6, ¶ 28.) Valentine also alleged that he was having a hard time walking since he reinjured his left knee.

Based on those allegations, Valentine filed his initial Complaint on October 29, 2018,[4] against Joseph Lynch, Nurse Plummer, Nurse Cludette Fluster, Nurse Joy Faith, Nurse Thomas, Doctor Cohan, Sung Kin, and PrimeCare Medical, Inc. He primarily contended that the Defendants were deliberately indifferent to his serious medical needs. Valentine sought damages, an injunction directing PrimeCare Medical to provide a more experienced doctor and/or treatment for his knee, and other miscellaneous relief.

After granting Valentine leave to proceed *in forma pauperis*, the Court screened Valentine's Complaint and dismissed it pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. First, the Court dismissed Valentine's claims against Lynch because those claims appeared to be based solely on Lynch's responses to Valentine's grievances, and prisoners do not have a constitutional right to a grievance process. Turning to Valentine's medical claims, the Court explained that, to state a claim, Valentine must plausibly allege that the Defendants were deliberately indifferent to his serious medical needs. However, Valentine's Complaint, as pled, failed to meet that standard as to the Defendants he named. Finally, the Court dismissed Valentine's claim against PrimeCare Medical, Inc. because Valentine failed to identify a policy

---

[4] Pursuant to the prison mailbox rule, a prisoner's complaint is considered filed at the time he or she hands it over to prison authorities for forwarding to the Court. *See Houston v. Lack*, 487 U.S. 266, 276 (1988); *Terrell v. Benfer*, 429 F. App'x 74, 75 n.1 (3d Cir. 2011) (per curiam). It is not clear when Valentine handed his Complaint to prison authorities for mailing, but it is dated October 29, 2018.

4

or custom of PrimeCare that caused the claimed constitutional violations. Valentine was given leave to file an amended complaint, which he did.

Valentine's Amended Complaint again raises claims pursuant to § 1983 based primarily on allegations that the Defendants were deliberately indifferent to his serious medical needs. The Amended Complaint is based on the same medical issues raised in the initial Complaint, specifically, the injuries to Valentine's back and knee. Valentine clarifies that on July 26, 2018, the Montgomery County Correctional Facility refused to admit him because he could not walk. He was given an x-ray at Pottstown Hospital, which revealed that he had four herniated discs, and also given medication. When he returned to the Montgomery County Correctional Facility the next day, the intake nurse assured him that he would receive his medication, even though he did not receive his mediation thereafter. It is not clear from Valentine's allegations what medication he was supposed to receive and/or whether the unidentified intake nurse is one of the nurses named as a Defendant.

Valentine alleges that as a result of his back problem, he could not sleep and experienced regular muscle spasms. He saw an unidentified nurse on or about August 10, 2018, who told him that "they would get [him his meds]."[5] (*Id.* at 21.) Again, it is not clear if this nurse is one of the named Defendants and, if so, which one. Valentine was given Motrin twice a day as well as a muscle relaxer, apparently in connection with his August 10, 2018 nurse visit, but it appears that this course of medication only lasted ten days, which Valentine attributes to PrimeCare's negligence. Valentine alleges that his pain worsened and when he was trying to do exercises, he

---

[5] According to the initial Complaint, Valentine received Motrin for a ten-day period ending August 8th.

aggravated an old knee injury. He alleges that he submitted sick call slips "several times" but got no answer. (*Id.* at 21.)

Valentine alleges that he saw Doctor Cohan on October 25, 2018, that he got an M.R.I. on November 9, 2018, which showed a "tare [sic] in [his] knee" and that he was sent to what appears to be a local orthopedic specialty hospital on December 12, 2018, albeit without his paperwork. (*Id.* at 18.) He also claims that he "never got meds, or physical therapy or a [doctor] to look at [his] M.R.I. or blood test." (*Id.*) However, his allegations are somewhat contradictory because it appears he was told the results of his M.R.I. and that he received Motrin, although he alleged that was insufficient. Valentine also alleges that he was given the incorrect medication on one occasion but the circumstances surrounding that allegation are unclear.

Valentine indicates that he cannot put any weight on his knee without extreme pain and that a nurse whom he does not identify informed him that he cannot have a cane or crutches because of his security level, even though he has seen other inmates with walkers and canes.[6] Valentine alleges that he experienced "sharp pain in [his] left knee, [and] could not walk" and that it felt like he "had a blood clot and [rubber] bands in [his] knee" that required a doctor's care and an M.R.I. (Am. Compl. at 18.) He notes that he does not feel safe in the shower and that he cannot visit with his family due to the pain. For relief, Valentine would like PrimeCare to pay for surgery and physical therapy as well as compensatory and punitive damages. He also seeks another M.R.I., crutches or a cane, a brace, and access to a "knee specialist doctor." (*Id.* at 21.)

---

[6] Although the initial Complaint identified this nurse as Defendant Kin, she is not so identified in the Amended Complaint. Valentine also alleges that his security level should be reduced because his bail has been lowered. It is not clear if he is seeking to bring a separate claim based on that allegation and, if so, how any of the named Defendants were responsible for matters related to his security level.

In the portion of the Amended Complaint that provides the factual details regarding his medical care or lack thereof, Valentine does not describe what each Defendant did or did not do. Rather, he has raised allegations against them in a separate part of his pleading. Valentine alleges that, among other things, Lynch failed to follow the grievance policy, "broke confidentiality," refused or delayed medical care, interfered with his medical treatment, and failed to "exercise the degree of care expected." (*Id*. at 6.) He also suggests that Lynch failed to keep "sensitive medical information" private, interfered with his access to the courts, retaliated against him, and harassed him. (*Id.* at 6.)

Valentine alleges that Doctor Cohan exhibited deliberate indifference by exposing him to "undue suffering by not getting [him] his meds [which] caused constant pain intentional refusal and [delaying] medical care . . . which made it unsafe for [him] to visit his family." (*Id*. at 7.) Valentine alleges that Kin exhibited deliberate indifference to his medical needs by "not getting [him] his meds" which caused pain, delayed care, and made it unsafe for him to visit his family. (*Id.* at 9.) He also suggests that Kin may have retaliated against him. Valentine essentially alleges that Nurse Plummer, Nurse Fluster, Nurse Faith and Nurse Thomas denied his requests for treatment and may have retaliated against him. (*Id*. at 11-14.) He does not elaborate, however, on those contentions.

## II.     STANDARD OF REVIEW

As Mr. Valentine is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether

7

the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As Valentine is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

### III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The Court understands Valentine to be pursuing constitutional claims based on deliberate indifference to his medical needs, a claim based on Lynch's handling of his grievance, and retaliation claims.[7] However, Valentine has not stated a § 1983 claim against the Defendants for the following reasons.

#### A. Claims Based on Handling of Grievances

As noted above, the Court understands Valentine to be pursuing a claim against Lynch based on the manner in which Lynch handled Valentine's grievances. However, as previously explained to Valentine, "[p]rison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam); *see*

---

[7] The Amended Complaint also purports to implicate the following rights: "right to life," "constitutional rights of prisoners," "novioation [sic]," "administrative review," "anal[o]gy of right to treatment in other areas," "judicial decisions," "right to rehabilitation programs," "the prison litigation reform act," "retaliation for exercising constitutional rights," "injuries," and "exhaustion of remedies." (Am. Compl. at 9.) Many of those phrases do not implicate a constitutional right. Accordingly, the Court has construed the Amended Complaint in the manner noted above. Likewise, any other conclusory allegations that could possibly be construed to give rise to a claim which is not mentioned above are vague and unsupported, and will not be further addressed in this Memorandum.

*also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (per curiam). Accordingly, Valentine cannot state a claim based on the manner that Lynch handled his grievances.

### B. Deliberate Indifference Claims

To state a § 1983 claim based on failures in medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).[8] A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

"Where prison officials know of the prisoner's serious medical need, deliberate indifference will be found where the official '(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment.'" *Bearam v. Wigen*, 542 F. App'x 91, 92 (3d Cir. 2013) (per curiam) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)); *see also Montgomery v. Aparatis Dist. Co.*, 607 F. App'x 184, 187 (3d Cir. 2015) (per curiam) ("Delay or denial of medical care violates the Eighth Amendment where defendants are deliberately indifferent to a prisoner's serious medical need."). Allegations of medical malpractice and mere disagreement regarding proper medical

---

[8] As Valentine's Amended Complaint indicates that he was a pretrial detainee at the time of the events giving rise to his claims, the Fourteenth Amendment is the proper vehicle for his claims. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005) (explaining that the Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement, while the Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees). The standard under the Eighth Amendment and Fourteenth Amendment for claims of deliberate indifference to medical needs is essentially the same for purposes of the analysis. *See Parkell v. Morgan*, 682 F. App'x 155, 159 (3d Cir. 2017) (per curiam).

9

treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Furthermore, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable . . . ." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (quotations omitted).

Mr. Valentine's Amended Complaint again fails to plausibly establish that the individual Defendants were deliberately indifferent to his serious medical needs. His description of the events giving rise to his claims does not describe what each Defendant did or did not do, nor does it illustrate how each Defendant was involved in the delays and other claimed problems with his medical care. Accordingly, it is not clear from the pleading what each Defendant knew about Valentine's needs and how each Defendant acted or failed to act such that they could be held liable for deliberate indifference. Although Valentine attempts to raise allegations specific to each Defendant, those allegations are entirely conclusory. For example, he claims that certain Defendants delayed care or failed to give him care but he does not follow those allegations with specific facts stating how, when, or under what circumstances the failures in care occurred. Accordingly, the Court will dismiss these claims because the Amended Complaint does not state a claim against the individual Defendants as pled. However, he will be given an opportunity to file a second amended complaint to clarify his claims.

It is also worth noting that Valentine's allegations are contradictory at times, making it difficult to evaluate his claims. He seems to be claiming that he did not receive care for his injuries, but his allegations also reflect that he was given care at varying levels throughout his incarceration. If Valentine is complaining of the adequacy of the care rather than a lack of care, his allegations sound more in negligence and as currently pleaded do not support a constitutional violation. Furthermore, some of the details regarding Valentine's care that were included in the

initial Complaint were left out of the Amended Complaint. If Valentine files a second amended complaint, he should include all the relevant facts related to what care he received and clearly state the role of each Defendant as related to his medical care.

Valentine also has not stated a claim against Prime Care. A private corporation under contract to provide prison health services may be liable under § 1983 if that entity's policies or customs caused the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009). As with his initial Complaint, Valentine's Amended Complaint does not clearly tie the claimed constitutional violation to a policy or custom of Prime Care. Accordingly, the Court must dismiss this claim as well. *See Folk v. Prime Care Med.*, No. 18-1352, 2018 WL 3359675, at *2 (3d Cir. July 10, 2018) ("[T]he District Court correctly concluded that Folk could not state a claim against the City of Harrisburg, Dauphin County Prison, Perry County Prison, the Perry County Prison Board, or PrimeCare because he did not allege that any constitutional violation stemmed from a policy or custom of any of these entities.").

### C. Retaliation Claims

Valentine also alleges that the Defendants retaliated against him. "To establish a claim of retaliation, a prisoner must show: (1) that he was engaged in a constitutionally protected activity; (2) that he 'suffered some adverse action at the hands of the prison officials'; and (3) that the protected activity was 'a substantial or motivating factor' in the prison officials' decision to take the adverse action." *Jones v. Davidson*, 666 F. App'x 143, 148 (3d Cir. 2016) (per curiam) (quoting *Rauser v. Horn*, 241 F.3d 330, 333-34 (3d Cir. 2001) (internal quotations omitted)).

11

Here, Valentine has not elaborated on his allegations that he has been retaliated against. He does not identify constitutionally protected conduct that he was retaliated against for exercising or meaningfully tie the issues with his medical care to a retaliatory motive. Accordingly, the Amended Complaint does not state a retaliation claim as pled.

### IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss Valentine's Amended Complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). However, the Court will give Mr. Valentine an opportunity to file a second amended complaint in accordance with the Court's Order accompanying this Memorandum in the event he can cure the defects in his claims. Valentine's Motion for Appointment of Counsel is denied at this time without prejudice to Valentine's reassertion in the event he files a second amended complaint. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (in determining whether appointment of counsel is appropriate, the Court should first determine whether plaintiff's lawsuit has a legal basis).

      /s/ Gerald Austin McHugh
United States District Judge